1  Elizabeth T. Castillo (#280502)
   ecastillo@cpmlegal.com
2  Mark C. Molumphy (#168009)
   mmolumphy@cpmlegal.com
3  Tamarah P. Prevost (#313422)
   tprevost@cpmlegal.com
4  Noorjahan Rahman (#330572)
   nrahman@cpmlegal.com
5
6  **COTCHETT, PITRE & McCARTHY, LLP**
   San Francisco Airport Office Center
7  840 Malcolm Road, Suite 200
   Burlingame, CA 94010
8  Telephone: (650) 697-6000
   Facsimile: (650) 697-0577
9

10 *Attorneys for Plaintiff Brian McNamara*
   *in McNamara v. Google LLC et al.,*
11 No. 3:20-cv-07361-JCS

12                 **UNITED STATES DISTRICT COURT**

13              **NORTHERN DISTRICT OF CALIFORNIA**

14

15                    **SAN JOSE DIVISION**

16 **BRIAN McNAMARA**, on behalf of          Case No. 3:20-cv-07361-JCS
   himself and all others similarly
17 situated,                                 **NOTICE OF LODGING OF**
                                             **ADMINISTRATIVE MOTION TO**
18              Plaintiff,                    **CONSIDER WHETHER CASES**
                                             **SHOULD BE RELATED**
19      v.                                    **PURSUANT TO CIVIL L.R. 3-12**

20 **GOOGLE LLC and ALPHABET**
   **INC**.,
21
22              Defendants.

23

24

25

26

27

28

---

TO THE COURT AND ALL PARTIES OF RECORD:

PLEASE TAKE NOTICE that on October 21, 2020, an Administrative Motion was filed to consider whether the above-captioned case should be related to *Epic Games, Inc. v. Google LLC et al.,* No. 3:20-cv-05671-JD (N.D. Cal., filed Aug. 13, 2020), the first-filed and lowest-numbered action. A copy of that filing is attached hereto as Exhibit A.


Dated: October 21, 2020

Respectfully Submitted,

COTCHETT, PITRE & McCARTHY LLP

*/s/ Noorjahan Rahman*

Noorjahan Rahman
nrahman@cmplegal.com
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577

*Attorneys for Plaintiff Brian McNamara*
*in McNamara v. Google LLC et al.,*
No. 3:20-cv-07361-JCS

# EXHIBIT A

Elizabeth T. Castillo (#280502)
ecastillo@cpmlegal.com
Mark C. Molumphy (#168009)
mmolumphy@cpmlegal.com
Tamarah P. Prevost (#313422)
tprevost@cpmlegal.com
Noorjahan Rahman (#330572)
nrahman@cpmlegal.com
**COTCHETT, PITRE & McCARTHY, LLP**
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577

*Attorneys for Plaintiff Brian McNamara*
*in McNamara. v. Google LLC et al.,*
No. 3:20-cv-07361-JCS

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| **EPIC GAMES.,**<br><br>                    Plaintiff,<br><br>        v.<br><br>**GOOGLE LLC; GOOGLE IRELAND LIMITED; GOOGLE COMMERCE LIMITED; GOOGLE ASIA PACIFIC PTE. LIMITED; and GOOGLE PAYMENT CORP.,**<br><br>                    Defendants. | Case No. 3:20-cv-05671-JD<br><br>**ADMINISTRATIVE MOTION TO CONSIDER WHETHER CASES SHOULD BE RELATED PERSUANT TO CIVIL L.R. 3-12** |

1    Pursuant to Civil Local Rule 3-12, Plaintiff Brian McNamara respectfully
2    moves this Court to consider whether his recently filed case, *McNamara. v. Google*
3    *LLC et al.*, No. 3:20-cv-07361-JCS (filed Oct. 20, 2020) ("*McNamara*"), should be
4    related to *Epic Games, Inc. v. Google LLC et al.*, No. 3:20-cv-05671-JD ("*Epic*"), the
5    lowest-numbered, related case. See also Related Case Orders, ECF Nos. 42 and 46.

6    # I.    RELEVANT BACKGROUND

7    On August 13, 2020, app distributor, Epic Games, Inc., filed an antitrust action
8    against Google, alleging that Google's unlawful monopolization of and exclusionary
9    conduct in the market in which Android apps are distributed enables Google to impose
10   a supra-competitive 30% tax on apps purchased from the Google Play Store. Additional
11   class actions on behalf of app developers and consumers were filed according to the
12   following table:

| Case Name | Date filed | Class |
|---|---|---|
| *Carr v. Google LLC et al.*, No. 3:20-cv-05761-JD ("*Carr*") | Aug. 16, 2020 | Consumer |
| *Pure Sweat Basketball, Inc. v. Google LLC et al.*, No. 3:20-cv-05792-JD ("*Pure Sweat Basketball*") | Aug. 17, 2020 | App |
| *Peekya Services Inc., v. Google LLC et al.*, No. 3:20-cv-06772-JD ("*Peekya Services*") | Sept. 29, 2020 | App |
| *Bentley et al. v. Google LLC et al.*, No. 4:20-cv-07079-DMR ("*Bentley*") | Oct. 9, 2020 | Consumer |
| *McNamara. v. Google LLC et al.*, No. 3:20-cv-07361-JCS ("*McNamara*") | Oct. 20, 2020 | Consumer |

This Court ordered the *Carr*, *Pure Sweat Basketball*, and *Peekya Services* class
actions related to the *Epic* case on on September 9, September 10, and October 9, 2020,
respectively.  *See* Related Case Orders ECF No. 42 (Sept. 9, 2020) ECF No. 46 (Sept.
10, 2020), and ECF No. 67 (Oct. 9, 2020).

At an Initial Case Management Conference held on October 8, 2020, this Court noted that "[c]onsolidation for all pre-trial and trial purposes is limited to *Carr*, 20-5761, and *Pure Sweat*, 20-5792, as well as *Peekya Services*, 20- 6772, which is related without opposition. Plaintiffs in those cases will file a consolidated amended complaint by October 21, 2020." See Civil Minutes of Initial Case Management Proceedings, ECF No. 66 (Oct. 9, 2020). Plaintiffs in these actions, as well as plaintiff in *Bentley*, subsequently filed a joint statement reporting their intent to file separate, consolidated amended complaints in the app developer and consumer cases. *See* Joint Proposed Plan for Discovery Coordination and Case Scheduling, ECF 54 (October 16, 2020).

## II.   LEGAL STANDARD FOR RELATING CASES

"Whenever a party knows or learns that an action, filed in or removed to this district is (or the party believes that the action may be) related to an action which is or was pending in this District as defined in Civil L.R. 3-12(a), the party must promptly file in the lowest-numbered case an Administrative Motion to Consider Whether Cases Should be Related, pursuant to Civil L.R. 7-11." Civil L.R. 3-12(b). Under Civil Local Rule 3-12(a), "[a]n action is related to another when: (1) The actions concern substantially the same parties, property, transaction or event; and (2) It appears likely that there will be an unduly burdensome duplication of labor and expense or conflicting results if the cases are conducted before different Judges." Civil L.R. 3-12(a).

## III.   THE ACTIONS SHOULD BE RELATED

The *McNamara* action involves substantially the same subject matter as, and overlapping defendants in, the *Epic*, *Carr*, *Pure Sweat Basketball*, *Peekya Services*, and *Bentley* cases. Each complaint names as defendant Google LLC.; challenges Google's conduct with regard to the Google Play Store; and alleges that Google

1  engaged in unlawful monopolization and restraints of trade, in violation of federal
2  antitrust law.

3        Plaintiffs in the consumer cases (*Carr* and *Bentley*) likely will seek the same or
4  similar discovery from the Google entities and non-parties, and Google likely will
5  proffer common factual and legal defenses and expert witnesses in each of the cases,
6  thus rendering separate actions before different courts unduly duplicative,
7  burdensome, and likely to result in conflicting results.

8  **IV.    CONCLUSION**

9        For the reasons set forth above, Plaintiffs respectfully request that the Court
10 order the *McNamara* case related to *Epic Games, Inc. v. Google LLC et al.*, No. 3:20-
11 cv-05671-JD, the lowest-numbered case.

12

13 Dated: October 21, 2020

14                                    Respectfully Submitted,

15                                    COTCHETT, PITRE & McCARTHY LLP

16                                    */s/ Noorjahan Rahman*
17                                      Noorjahan Rahman
                                        nrahman@cmplegal.org
18                                      San Francisco Airport Office Center
                                        840 Malcolm Road, Suite 200
19                                      Burlingame, CA 94010
                                        Telephone: (650) 697-6000
20                                      Facsimile: (650) 697-0577
21
22                                    *Attorneys for Plaintiff Brian McNamara*
                                      *in McNamara. v. Google LLC et al.*,
23                                    No. 3:20-cv-07361-JCS

24

25

26

27

28

1

**<u>CERTIFICATE OF SERVICE</u>**

2      I hereby certify that on October 21, 2020, I caused to be filed electronically a

3  true and accurate copy of this Administrative Motion to Consider Whether Cases

4  Should be Related Pursuant to Civil L.R. 3-12 with the Clerk of the Court using the

5  CM/ECF system maintained by the United States District Court for the Northern

6  District of California, which will send notification of such filing to the email

7  addresses denoted on the Court's Electronic Mail Notice List.

8      I further certify that I caused to be electronically filed the foregoing document

9  to the parties listed in the related case *McNamara v. Google LLC,* No. 3:20-cv-07361-

10  JCS, which will send notification of such filing to the email addresses denoted on the

11  Court's Electronic Mail Notice List.

12      I certify under penalty of perjury under the laws of the United States of

13  America that the foregoing is true and correct.

14

15                          */s/ Noorjahan Rahman*
                                    Noorjahan Rahman
16

17

18

19

20

21

22

23

24

25

26

27

28

Elizabeth T. Castillo (#280502)
ecastillo@cpmlegal.com
Mark C. Molumphy (#168009)
mmolumphy@cpmlegal.com
Tamarah P. Prevost (#313422)
tprevost@cpmlegal.com
Noorjahan Rahman (#330572)
nrahman@cpmlegal.com
**COTCHETT, PITRE & McCARTHY, LLP**
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577

*Attorneys for Plaintiff Brian McNamara*
*in McNamara v. Google LLC et al.,*
No. 3:20-cv-07361-JCS

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| **EPIC GAMES.,**<br><br>    Plaintiff,<br><br>  v.<br><br>**GOOGLE LLC; GOOGLE IRELAND LIMITED; GOOGLE COMMERCE LIMITED; GOOGLE ASIA PACIFIC PTE. LIMITED; and GOOGLE PAYMENT CORP.,**<br><br>    Defendants. | Case No. 3:20-cv-05671-JD<br><br>**DECLARATION OF NOORJAHAN RAHMAN IN SUPPORT OF ADMINISTRATIVE MOTION TO CONSIDER WHETHER CASES SHOULD BE RELATED PERSUANT TO CIVIL L.R. 3-12** |

DECLARATION OF NOORJAHAN RAHMAN

I, Noorjahan Rahman, pursuant to 28 U.S.C. § 1746, hereby declare:

1.     I am an associate at Cotchett, Pitre & McCarthy LLP, and I represent Plaintiff Brian McNamara.   I respectfully submit this declaration in support of Plaintiff's Administrative Motion to Consider Whether Cases Should be Related Pursuant to Civil L.R. 3-12.

2.     I have personal knowledge of the matters set forth herein and could and would testify competently thereto if called upon to do so.

3.     A stipulation pursuant to Civil L.R. 7-11 for Plaintiff's Administrative Motion to Consider Whether Cases Should be Related could not be obtained because Plaintiff filed his Complaint on October 20, 2020 and Defendants have not yet appeared in Plaintiff's case.

4.     Attached as Exhibit A is a true and correct copy of the complaint filed in *McNamara v. Google LLC et al.,* No. 3:20-cv-07361-JCS (N.D. Cal., filed October 20, 2020).

I declare under the penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed in Burlingame, California, this 21st day of October 2020.

Respectfully Submitted,


*/s/ Noorjahan Rahman*
Noorjahan Rahman

DECLARATION OF NOORJAHAN RAHMAN                    1

# EXHIBIT A

Elizabeth T. Castillo (#280502)
ecastillo@cpmlegal.com
Mark C. Molumphy (#168009)
mmolumphy@cpmlegal.com
Tamarah P. Prevost (#313422)
tprevost@cpmlegal.com
Noorjahan Rahman (#330572)
nrahman@cpmlegal.com
**COTCHETT, PITRE & McCARTHY, LLP**
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577

*Attorneys for Plaintiff Brian McNamara*
*and all others similarly situated*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| **BRIAN McNAMARA**, on behalf of himself and all others similarly situated,<br><br>        Plaintiff,<br><br>   v.<br><br>**GOOGLE LLC and ALPHABET INC.**,<br><br>        Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF:**<br><br>  1. **THE SHERMAN ACT – MONOPOLIZATION (15 U.S.C. § 2);**<br><br>  2. **THE SHERMAN ACT – ATTEMPTED MONOPOLIZATION (15 U.S.C. § 2); and**<br><br>  3. **CALIFORNIA UNFAIR COMPETITION LAW (CAL. BUS. & PROF. CODE §§ 17200, *ET SEQ.*)**<br><br>**DEMAND FOR JURY TRIAL** |

# TABLE OF CONTENTS

I.   NATURE OF ACTION ...................................................................................1

II.  JURISDICTION, VENUE AND INTRADISTRICT ASSIGNMENT .....................1

III. PARTIES .....................................................................................................3

   A.  Plaintiff...............................................................................................3

   B.  Defendants..........................................................................................3

IV.  FACTUAL ALLEGATIONS...........................................................................3

   A.  Google ...............................................................................................3

   B.  The Android Mobile App Market ....................................................... 4

   C.  Google's Willful Acquisition and Maintenance of its Monopoly in the
       Android Mobile App Market .............................................................. 8

V.   ANTITRUST INJURY ..................................................................................8

VI.  MARKET DEFINITION ................................................................................9

VII. TOLLING OF STATUTE OF LIMITATIONS....................................................9

VIII. CLASS ACTION ALLEGATIONS ...............................................................11

IX.  CAUSES OF ACTION ................................................................................15

     FIRST CAUSE OF ACTION
     Violation of Sherman Act -- Monopolization
     (15 U.S.C. § 2) .................................................................................. 15

     SECOND CAUSE OF ACTION
     Violation of Sherman Act – Attempted Monopolization
     (15 U.S.C. § 2) .................................................................................. 17

     THIRD CAUSE OF ACTION
     Violation of the California Unfair Competition Law
     (Cal. Business and Professions Code § 17200, *et seq.*) .............................. 19

X.   PRAYER FOR RELIEF................................................................................20

XI.  DEMAND FOR JURY TRIAL......................................................................21

*"It is stunning that members of Congress mostly agree that four of America's most successful companies are bullies that abuse their power to stay on top."*

*"The House report was unequivocal that Google and Facebook are monopolies, and that elements of Amazon and Apple are as well."*

—Shira Ovide, *Congress Agrees: Big Tech Is Broken*, N.Y. TIMES, Oct. 7, 2020.[1]

## I.  NATURE OF ACTION

1.  Plaintiff Brian McNamara ("Plaintiff"), on behalf of himself and all others similarly situated (the "Class" as defined below), on personal knowledge as to the facts pertaining to him and on information and belief as to all other matters, and based on the investigation of counsel, brings this class action for damages, injunctive relief, and other relief pursuant to federal antitrust laws and California antitrust, unfair competition, and consumer protection laws. Plaintiff demands a trial by jury and alleges as follows.

2.  Google's Play Store is available to mobile device users running Google's Android operating system ("OS"). While Google claims that the Android OS is maintained as "open" source software, Google has engaged in course of conduct designed to deter competition in the market for Android mobile applications of "apps" and products sold with such apps ("Android Mobile App Market").

3.  Accordingly, Plaintiff and the putative Class have overpaid or otherwise suffered economic losses due to Google's monopolization of this market and therefore sue for damages, injunctive relief, and other relief.

## II.  JURISDICTION, VENUE AND INTRADISTRICT ASSIGNMENT

4.  Plaintiff brings this action under Sections 4, 12, and 16 of the Clayton Act (15 U.S.C. §§ 15, 22, and 26) for treble damages, injunctive relief, other relief, and reasonable attorneys' fees and costs with respect to the injuries sustained by

---

[1] *Available at* https://www.nytimes.com/2020/10/07/technology/congress-big-tech.html (last accessed October 20, 2020).

1  Plaintiffs arising from violations by Defendants of the federal antitrust laws,

2  including Section 2 of the Sherman Antitrust Act (15 U.S.C. § 2).

3      5.      This Court has jurisdiction over this action pursuant to Sections 1331,

4  1337(a) and 1367 of Title 28 of the United States Code (28 U.S.C. §§ 1331, 1337(a)

5  and 1367).

6      6.      This Court has *in personam* jurisdiction over Defendants because each,

7  directly and/or through its ownership or control of subsidiaries: (a) transacted

8  business in the United States, including in this District; (b) are registered to do

9  business in the state of California; (c) had substantial aggregate contacts with the

10  United States, including this District; and/or (d) engaged in anticompetitive acts

11  that were directed at, and had a direct, substantial, and reasonably foreseeable and

12  intended effect of injuring, the business or property of persons and entities residing

13  in, located in, or doing business throughout the United States, including in this

14  District. Defendants conduct business throughout the United States, including in

15  this District, and have purposefully availed themselves of the laws of the United

16  States.

17      7.      Venue is proper in this District pursuant to Sections 15 and 22 of Title

18  15 of the United States Code (15 U.S.C. §§ 15 and 22) and Sections 1391(b) and (c) of

19  Title 28 of the United States Code (28 U.S.C. § 1391(b) and (c)) because a substantial

20  part of the events giving rise to Plaintiff's claims occurred in this District, a

21  substantial portion of the affected interstate trade and commerce was carried out in

22  this District, and one or more of the Defendants reside in this District or is licensed

23  to do business in this District. Each Defendant has transacted business, maintained

24  substantial contacts, and/or committed overt acts in furtherance of the illegal

25  restraint of trade throughout this District. The anticompetitive conduct alleged

26  herein has been directed at, and has had the intended effect of, causing injury to

27  persons residing in, located in, or doing business in this District.

28

8.    Pursuant to the Northern District of California's Civil Local Rule 3-2(c) & (e), the intradistrict assignment should be to the San Jose Division. This action arises in Santa Clara County because a substantial part of the events giving rise to these claims occurred in Santa Clara County. Additionally, Google has offices in Mountain View, Sunnyvale, and San Jose.

## III.   PARTIES

### A.   Plaintiff

9.    Plaintiff Brian McNamara ("Plaintiff") is an individual and purchased and paid Google for one or more apps through the Google Play Store.  Plaintiff is a resident of Half Moon Bay, California.

### B.   Defendants

10.    Google LLC is a limited liability company organized under the laws of Delaware with its principal place of business in Mountain View, California. Google LLC is a technology company that provides internet-related services and products, including online advertising technologies and a search engine.

11.     Alphabet Inc. is a Delaware corporation and has its principal place of business in Mountain View, California. Google LLC is a wholly owned subsidiary of Alphabet Inc.

12.    Google LLC and Alphabet Inc. are collectively referred to herein as "Google."

## IV.   FACTUAL ALLEGATIONS

### A.   Google

13.    Google was launched in 1998 as a general online search engine that served users web results in response to online queries. Google's key innovation was its PageRank algorithm, which ranked the relevance of a webpage by assessing how many other webpages linked to it. PageRank enabled Google to improve the quality of its search results even as the web rapidly grew in contrast with the technology

1  used by rival search engines. While Google had entered a crowded field, it had

2  become the world's largest search engine by 2000. Google launched AdWords, an

3  online advertising service that let businesses purchase keyword advertising to

4  appear on Google's search results page—an offering that would evolve to became the

5  heart of Google's business model—later that year.

6       14.     Google is now ubiquitous across the digital economy, serving as the

7  infrastructure for core products and services online. It has grown and maintained its

8  search engine dominance, such that "Googling" something is now synonymous with

9  online search itself. Google is now also the largest provider of digital advertising, a

10  leading web browser, a dominant mobile operating system, and a major provider of

11  digital mapping, email, cloud computing, and voice assistant services, alongside

12  dozens of other offerings. Nine of Google's products—Android, Chrome, Gmail,

13  Google Search, Google Drive, Google Maps, Google Photos, Google Play Store, and

14  YouTube—have more than a billion users *each*. Each of these services provides

15  Google with a trove of user data, reinforcing its dominance across markets and

16  driving greater monetization through online ads.

17       15.     Google is one of the world's largest corporations. For 2019, Google

18  reported total revenues of $160.7 billion—up 45% from 2017—and more than $33

19  billion in net income. Google has enjoyed strong and steady profits, with profit

20  margins greater than 20 percent for nine out of the last 10 years, close to three times

21  larger than the average for a U.S. firm. Financial analysts predict that Google is

22  well positioned to maintain its dominance, noting that "Alphabet has established

23  unusually deep competitive moats around its business."

24       **B.**     **The Android Mobile App Market**

25       16.     In the late 1990s and early 2000s, when Google was formed, internet

26  searches were almost exclusively performed through browsers on computers.

27  However, over the past two decades, individuals increasingly used non-desktop

28  devices to access the internet, such as phones and other mobile devices.  Thus,

---

Google launched a business policy to target users of mobile devices and to ensure their products adopt versions of Google's technology, products and operating systems.

17.     A mobile app is software designed for use on a mobile device to provide access to digital content or services. Popular mobile apps allow users to share content or play games and, importantly, permit "in app" sale or purchase transactions for goods and services. Mobile apps can be pre-installed on a mobile device as a component of the OS by the Original Equipment Manufacturer ("OEM"), or otherwise loaded directly onto the mobile device from the web using a web browser (a process that Google refers to as "sideloading"). The most frequent way that consumers access mobile apps is through an app store, which itself may be pre-installed on the mobile device. Google uses its Google Play Store to control the mobile app market for devices using the Android OS.

18.     An app store is the central point for users to access mobile apps. It centralizes and curates the distribution of mobile apps in a convenient manner for users, and allows users to search, review and buy a mobile app in one spot.

19.     There is separate market for mobile apps specific to the OS, including apps developed for Apple iOS and only work on Apple mobile devices and apps developed for Android OS and only work on Android mobile devices. For the same reason, Apple's App Store and the Google Play Store do not compete against one another.

20.     In order to establish dominance, Google released the Android mobile operating system. Google released the Android code for free as "open source," which means that anyone could access the code and modify it. Modifying the operating system constitutes a "fork."

21.     The open source aspect of the Android OS was key to its wide adoption by OEMs (such as LG, Motorola, Samsung, etc.) and phone carriers (such as AT&T, T-Mobile/Spring, Verizon, etc.). Google's supposed lack of control over an open

source OS led skeptical OEMs and phone carriers to use Android instead of other choices then available. The open source model suggested that the distributors, and not Google, would ultimately retain control over their devices and the app ecosystem on those devices.

22. However, once the distributors agreed to use Android OS, app developers looking for wide distribution of their apps were then incentivized by Google to develop apps compatible with Android OS. As more apps became available on Android OS, the operating system became more attractive to consumers which in turn led to even more developers designing for Android.

23. To achieve desired network effects and make the Android system ubiquitous, Google then "shared" its search advertising and app store revenues with distributers to further induce distributors to give up control over the OS and what apps come preinstalled on mobile devices.

24. Google solidified market dominance of Android OS through a series of contracts with distributors designed to minimize competition. Google requires OEMs such as LG, Motorola, and Samsung to enter "anti-forking agreements." These agreements specifically forbid OEMs from developing or distributing versions of Android that do not comply with onerous Google-controlled technical standards. The signatories may not distribute devices with Android forks, or us their powerful brands to market forks on behalf of third parties. As a result of Google's anticompetitive practices, Android OS represents over 95 percent of licensable mobile operating systems for smartphones and tablets in the United States.

25. With control over the dominant Android OS, Google exercised its monopoly power to establish the Google Play Store as the dominant "store" by which other applications can be downloaded for use by consumers on the Android ecosystem.

26. Google required that mobile device OEMs pre-install the Google Play Store on all mobile devices, knowing that users rarely change defaults. Google also

refuses to allow any rival app <u>store</u> to be downloaded from the Google Play Store. Indeed, third-party app stores could only be accessed by "sideloading," a complicated multi-step process where users are warned that sideloading is unsafe. Thus, while Google theoretically permits sideloading third-party app stores, few users pursue this option because Google implements significant frictions designed to steer consumers away from sideloading.

27.    Google also limits basic app functions that are available to apps downloaded on the Google Play Store, including making it more difficult for users to update apps (versus automatic updates in the mobile device's background).

28.    Because the Google Play Store is the primary way users install applications on Android devices, the Play Store effectively functions as a gatekeeper for software distribution on all mobile devices with Android OS.

29.    As a result of its monopolistic conduct, Google has extracted supracompetitive prices for its Android app distribution services and in-app purchases made through the Google Play Store, including a 30 percent commission on sales of paid apps and a 30 percent fee for in-app purchases. Google collects and processes these commissions and fees directly from Plaintiff and Class Members, remitting the remainder of their payment to the mobile app developer.

30.    Google uses its gatekeeping power over third-party app developers through arbitrary and unaccountable enforcement of Play Store policies, which then protect the dominance of Google's own services and stifles rivals. For example, one mobile app "Callsome" was banned from the Google Play store for "Ad Policy" violations only to learn later that an identical product was able to stay and thrive in the Play Store. Callsome believes it was banned because of its partnership with SmartApp, which at the time was widely considered to be a nascent but rising rival to Google in the Russian market.

C.     **Google's Willful Acquisition and Maintenance of its Monopoly in the Android Mobile App Market**

31.     Google maintains a monopoly in the Android Mobile App Market and is able to charge supracompetitive prices for mobile app and in-app purchases. Google uses anticompetitive covenants in Google's Mobile Application Distribution Agreement ("MADA"), requiring OEMs to license the entire suite of Google applications and services in order to also license the Android OS. Google also requires OEMS to pre-install the Google Play Store on its home page. If OEM refuse these restrictive terms and conditions, they lose access to the Android OS.

32.     As a result of the MADA terms and conditions, Google has successfully prevented competition from its rivals in the Android Mobile App Market. Google's MADA agreements also allow Google to charge supracompetitive prices for mobile app and in-app purchases, harming Plaintiff and Class Members by limiting consumer choice.

33.     Similarly, Google uses its Developer Distribution Agreement ("DDA") to contractually restrict competition in the Android Mobile App Market. Amongst other therms, the DDA mandated that developers comply with Google's Developer Program Policies, including using Google's proprietary in-app billing for in-app game payments, as well as certain other digital in-app purchases. The DDA also requires that developers "may not use Google Play to distribute or make available any Product that has a purpose that facilitates the distribution of software applications and games for use on Android devices outside of Google Play." Google has the right to remove any Android app it believes has violated any portion of the DDA.

V.     **ANTITRUST INJURY**

34.     Plaintiff and Class Members purchased Android mobile apps and in-app digital content directly from Google through the Google Play Store. Without the unlawful restraints described above, Plaintiff and Class Members would not have to pay supra competitive price for mobile apps and in-app purchases. Google's

1   anticompetitive practices also stalled, limited or foreclosed competition and

2   innovation in the Android Mobile App Market.

3   **VI.   MARKET DEFINITION**

4   35.   The relevant product market is the market for Android mobile apps and

5   in-app purchases.  The relevant geographic market for purposes for this action is the

6   United States and its territories.  Google has significant and durable power in this

7   market, app stores and mobile apps are developed and distributed throughout the

8   United States, and Google's Play Store is available to Android users throughout the

9   United States.

10  **VII.   TOLLING OF STATUTE OF LIMITATIONS**

11  36.   Plaintiff and Class members had no knowledge of Google's

12  anticompetitive conduct, or of facts sufficient to place them on inquiry notice of the

13  claims asserted herein, during the Class period and continuing thereafter, until

14  October 2020 when the United States House of Representatives published its

15  Investigation of Competition in Digital Markets and provided details concerning

16  Google and its conduct.

17  37.   Plaintiff and Class members suffered economic loss due to Google's

18  wrongful exercise of monopoly power. Plaintiff's interactions with Google were

19  insufficient, however, to discover Google's wrongful conduct.

20  38.   Furthermore, no public information was available during the Class

21  period or thereafter that suggests Google's business activities were done to

22  monopolize the Android Mobile App Market until the House published the Report of

23  its investigation against Google.

24  39.   Moreover, it was reasonable for Plaintiff and Class members not to

25  suspect that Defendants were engaging in any unlawful anticompetitive behavior.

26  Plaintiff and class members are merely consumers of apps and were not active

27  participants in the market.

28

40.     Plaintiffs allege a continuing course of unlawful conduct by Google, including conduct within the applicable limitation periods. That conduct has inflicted continuing and accumulating harm within the applicable statutes of limitation.

41.     For these reasons, the statutes of limitations applicable to Plaintiffs' and Class members' claims have been tolled with respect to the claims asserted herein until the House Report about Google became public.

42.     Additionally, or alternatively, application of the doctrine of fraudulent concealment tolled the statutes of limitations on Plaintiff's claims. Plaintiff and Class members had no knowledge of Google's wrongful acquisition and maintenance of monopoly power in the relevant market, or of facts sufficient to place them on inquiry notice of their claims, during the Class period and continuing thereafter. No information in the public domain or otherwise available to Plaintiffs and Class members during the Class period suggested that Google had wrongfully acquired a monopoly or was using its monopoly power to charge supra-competitive prices.

43.     In failing to disclose its wrongful monopolization, in addition to denying it was engaged in such conduct, Google was able to conceal its illicit conduct. In fact, Google has made public denials to this effect in the United States and to foreign regulators.

44.     After it was revealed that the House was investigating Google's monopoly, Google denied such conduct.  Similarly, in response to recent news reports of impending antitrust actions against it by federal and state officials for monopolization, Google stated publicly that competition is flourishing, and publishers and marketers have enormous choice when that was plainly incorrect.

45.     Further, Google's anticompetitive monopoly conduct was inherently self-concealing because, as Google knew, its disclosure likely would have led to governmental enforcement activity or civil liability.  Google's conduct is subject to antitrust regulation, so it was reasonable for Plaintiffs and Class members to

presume that it was purchasing apps in a competitive market. A reasonable person under the circumstances would not have had occasion to suspect that apps were being sold at supra-competitive prices at any time during the Class period.

## VIII. CLASS ACTION ALLEGATIONS

46. Plaintiff brings this action both on behalf of himself and as a class action pursuant to Federal Rule of Civil Procedure 23(b)(2) and (b)(3) on behalf of the following Class:

> All persons and entities in the United States that made payment to Google for a mobile app on the Google Play Store, subscription fees for a mobile app obtained on the Google Play Store, or app content from a mobile app downloaded from the Google App Store, from at least as early as January 1, 2016 through the present ("Class Period").

47. This definition specifically excludes any of the Defendants named herein, any of the Defendants' parent companies, subsidiaries, and affiliates, and any of the Defendants' officers, directors, management, employees, subsidiaries, affiliates or agents. Plaintiff reserves the right to expand, modify, or alter the class definition in response to information learned during discovery.

48. This action is properly brought as a class action under Federal Rule of Civil Procedure 23(a) for the following reasons:

> a. **Numerosity (Fed. R. Civ. P. 23(a)(1)):** The proposed Class is so numerous and geographically dispersed that the joinder of all Class Members is impracticable. While Plaintiff does not know the exact number and identity of all Class Members, Plaintiff is informed and believe that there are millions of Class Members. The precise number of Class Members can be ascertained through discovery;
>
> b. **Commonality and Predominance (Fed. R. Civ. P. 23(a)(2) and 23(b)(3)):** There are questions of law and fact common to the

proposed class which predominate over any questions that may affect particular Class Members. Such common questions of law and fact include, but are not limited to:

i. Whether Defendants monopolized the market for Android Mobile Apps at any time during the Class Period;

ii. Whether Google unlawfully acquired and maintained monopoly power in the relevant market;

iii. Whether Plaintiff and the other members of the Class were injured by Defendants' conduct and, if so, the determination of the appropriate Class-wide measure of damages;

iv. Whether Plaintiff and other members of the Class are entitled to, among other things, injunctive relief, and, if so, the nature and extent of such relief;

v. Whether the alleged conspiracy violated the Sherman Act;

vi. Whether the alleged conspiracy violated California's antitrust and unfair competition laws;

vii. Whether Defendants unjustly enriched themselves to the detriment of the Plaintiffs and the members of the Class, thereby entitling Plaintiff and the members of the Class to disgorgement of all benefits derived by Defendants;

viii. Whether Plaintiff and members of the Class had any reason to know or suspect the conspiracy, or any means to discover the conspiracy; and

ix. Whether the Defendants and their co-conspirators fraudulently concealed the conspiracy's existence from Plaintiff and the members of the Class.

c. **Typicality (Fed. R. Civ. P. 23(a)(3)):** Plaintiff's claims are typical of the claims of the members of the proposed Class. Plaintiff and the Class have been injured by the same wrongful practices of Defendants. Plaintiff's claims arise from the same practices and conduct that give rise to the claims of the Class and are based on the same legal theories;

d. **Adequacy of Representation (Fed. R. Civ. P. 23(a)(4)):** Plaintiff will fairly and adequately protect the interests of the Class in that he has no interests antagonistic to those of the other members of the Class, and Plaintiff has retained attorneys experienced in antitrust class actions and complex litigation as counsel;

49. This action is properly brought as a class action under Federal Rule of Civil Procedure 23(b) for the following reasons:

a. **Declaratory and Injunctive Relief (Fed. R. C. P. 23(b)(2)):** Certification under Rule 23(b)(2) is warranted because Defendants acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive, declaratory, or other appropriate equitable relief with respect to the Class as a whole.

b. **Superiority (Fed. R. Civ. P. 23(b)(3)):** Certification under Rule 23(b)(3) is appropriate because questions of law or fact common to members of the Class predominate over any questions affecting only individual members, and class action treatment is superior to the other available methods for the fair and efficient adjudication of this controversy.

c. The proposed Class is ascertainable and there is a well-defined community of interest in the questions of law or fact alleged herein

since the rights of each proposed Class Member were infringed or violated in the same fashion;

50. A class action is superior to other available methods for the fair and efficient adjudication of this controversy for at least the following reasons:

a. Given the size of individual Class Member's claims and the expense of litigating those claims, few, if any, Class Members could afford to or would seek legal redress individually for the wrongs Defendants committed against them and absent Class Members have no substantial interest in individually controlling the prosecution of individual actions;

b. This action will promote an orderly and expeditious administration and adjudication of the proposed Class claims, economies of time, effort and resources will be fostered, and uniformity of decisions will be insured;

c. Without a class action, Class Members will suffer damages, and Defendant's violations of law will proceed without remedy while Defendants reaped and retained the substantial proceeds of their wrongful conduct; and

d. Plaintiff knows of no difficulty that will be encountered in the management of this litigation which would preclude its maintenance as a class action.

## IX.  CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### Violation of Sherman Act -- Monopolization

### (15 U.S.C. § 2)

51.  Plaintiff hereby repeats and incorporates by reference each preceding paragraph as if fully stated herein.

52.  Plaintiff brings this claim on his own behalf and on behalf of each member of the Class described above.

53.  The relevant market is the U.S. market for mobile apps and in-app purchases sold in the Android Mobile App Market.

54.  Google has gained and maintains monopoly power in the relevant market by improper and unlawful means. More specifically, Google has willfully acquired and maintained such power by coercing the purchase of Android Mobile Apps and in-app products and services at artificial prices and by its patently exclusionary conduct, including its refusal to allow rival app stores to be accessed through the Google Play Store and implementing significant frictions designed to steer consumers away from sideloading third-party app stores. Consumers must use the Android Mobile App Market to obtain Android mobile apps and in-app purchases.

55.  For the reasons stated herein, substantial barriers to entry exist in the relevant market.

56.  Google has the power to exclude competition in the relevant market, and it has used that power, including by way of its unlawful practices in restraint of trade as described herein, to maintain and expand its monopoly power in that market.

57.  Google's conduct as described herein, including its unlawful practices in restraint of trade, is exclusionary vis-à-vis its rival app stores in the U.S. market for Android mobile apps and in-app purchases.

58.     Google has behaved as alleged herein in an attempt to obtain a monopoly in the U.S. market for Android mobile apps and in-app purchases, with the effect being that competition is foreclosed, innovation is stifled, and consumer choice is gravely diminished. Additionally, Google has abused its market power by charging supra-competitive 30 percent commission on sales of paid apps and a 30 percent fee for in-app purchases. Further, Google's actions have depressed output and stifled innovation and options for consumers as alleged herein.

59.     There is no business necessity or other pro-competitive justification for Google's conduct.

60.     As a direct and proximate cause of Google's conduct, Plaintiff and members of the Class have suffered antitrust injury. Plaintiff and the Class members paid significantly higher prices for Android mobile apps and in-app purchases than they would have but for Google's unlawful conduct. That conduct also deprived Plaintiff and Class members of improved quality and innovation in the relevant markets.

61.     Plaintiff is inclined to continue to purchase Android mobile apps and in-app purchases in the future because of his investment in the mobile device containing the Android OS.

62.     Plaintiff and members of the Class are entitled to damages, including treble damages, sustained because of Google's monopolistic acts and practices.

63.     Plaintiff and members of the Class are entitled to equitable relief as appropriate to cure Google's monopoly conduct and restore competition in the relevant market. Members of the Class are regular users of the Android Mobile App market and will continue to purchase such apps and in-app products and services and suffer further injury if Google's monopoly is not ended.

64.     Plaintiff and the Class also are entitled to injunctive relief to prevent Google from persisting in its unlawful, inequitable, and unjustified behavior to their detriment, with such an injunction at a minimum prohibiting Google from

continuing to: charge supra-competitive commission on sales of paid apps and a supra-competitive percent fee for in-app purchases. *See*, *e.g.*, 15 U.S.C. § 26.

## SECOND CAUSE OF ACTION

### Violation of Sherman Act – Attempted Monopolization

### (15 U.S.C. § 2)

65.     Plaintiff hereby repeats and incorporates by reference each preceding paragraph as if fully stated herein.

66.     Plaintiff brings this claim on his own behalf and on behalf of each member of the Class described above.

67.     The relevant market is the U.S. market for mobile apps and in-app purchases sold in the Android Mobile App Market.

68.     Google has attempted to monopolize the U.S. market for Android mobile apps. More specifically, Google has willfully acquired and maintained market power by its patently exclusionary conduct, including its refusal to allow rival app stores to be accessed through the Google Play Store and implementing significant frictions designed to steer consumers away from sideloading third-party app stores. Consumers must use the Android Mobile App Market to obtain Android mobile apps and in-app purchases.

69.     Google's anticompetitive conduct has created a dangerous probability that it will achieve monopoly power in the U.S. market for Android mobile apps and in-app purchases.

70.     Google has a specific intent to achieve monopoly power in the U.S. market for Android mobile apps and in-app purchases. Now, and if its unlawful restraints are not checked, Google has a dangerous probably of success in the relevant market as defined by the Plaintiffs.

71.     Google has the power to exclude competition in the U.S. market for Android mobile apps and in-app purchases, and it has used that power, including by

way of its unlawful practices in restraint of trade as described herein, in an attempt to monopolize that relevant market.

72.    Google's conduct as described herein, including its unlawful practices in restraint of trade, is exclusionary vis-à-vis its rival app stores in the U.S. market for Android mobile apps and in-app purchases.

73.    Google has behaved as alleged herein in an attempt to obtain a monopoly in the U.S. market for Android mobile apps and in-app purchases, with the effect being that competition is foreclosed, innovation is stifled, and consumer choice is gravely diminished. Additionally, Google has abused its market power by charging supra-competitive 30 percent commission on sales of paid apps and a 30 percent fee for in-app purchases. Further, Google's actions have depressed output and stifled innovation and options for consumers as alleged herein.

74.    There is no business necessity or other pro-competitive justification for Google's conduct.

75.    Plaintiff and the Class have been injured, and will continue to be injured, in their property as a result of Google's conduct, including by way of overpaying for Android mobile apps and in-app purchases.

76.    Plaintiff is inclined to continue to purchase Android mobile apps and in-app purchases in the future because of his investment in the mobile device containing the Android OS.

77.    Plaintiff and the Class also are entitled to injunctive relief to prevent Google from persisting in its unlawful, inequitable, and unjustified behavior to their detriment, with such an injunction at a minimum prohibiting Google from continuing to: charge supra-competitive commission on sales of paid apps and a supra-competitive percent fee for in-app purchases. *See*, *e.g.*, 15 U.S.C. § 26.

**THIRD CAUSE OF ACTION**

**Violation of the California Unfair Competition Law**

**(Cal. Business and Professions Code § 17200, *et seq.*)**

78.     Plaintiff hereby repeats and incorporates by reference each preceding paragraph as if fully stated herein.

79.     Google's conduct is unlawful in violation of California's Unfair Competition Law ("UCL") because it violates Section 2 of the Sherman Act, 15 U.S.C. § 2.

80.     Google has engaged in unfair business practices through the conduct alleged herein, which has restrained competition. Google's conduct is unfair and in violation of the UCL because it violates California's clearly established public policy forbidding monopolistic acts. Google wrongfully acquired and unlawfully maintained monopoly power in the relevant market through the conduct alleged herein, including by leveraging its monopoly power in the Android Mobile App market to coerce the purchase of Android Mobile Apps and in-app products and services at artificial prices.

81.     Google's practices also are unlawful in violation of the UCL because they offend public policy; are immoral, unethical, oppressive, outrageous, unscrupulous, and substantially injurious; and caused substantial harm, including in the form of artificially inflated prices, that greatly outweighs any possible utility from the practices.

82.     Google's conduct actually and proximately caused Plaintiff and Class members to lose money or property.  On behalf of the Class, Plaintiff seeks damages, injunctive relief, and reasonable attorneys' fees and costs, as well as any other relief the Court may deem just or proper.

## X.    **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that the Court enter judgment on his behalf and on behalf of the Class defined herein, by adjudging and decreeing that:

1.    That the Court determine that this action may be maintained as a class action under Federal Rule of Civil Procedure 23(b)(2), (b)(3), and (c)(4) that Plaintiff be certified as Class representative, and Plaintiff's counsel be appointed as counsel for the Class;

2.    That the unlawful contract, combination, or conspiracy alleged be adjudged and decreed to be an unreasonable restraint of trade or commerce in violation of Section 2 of the Sherman Act;

3.    That Defendants have violated the UCL by engaging in conduct that constitutes unlawful, unfair and fraudulent business practices;

4.    That Plaintiff and the Class have been injured in their business and property as a result of Defendants' violations;

5.    That Plaintiff and the Class recover damages, as provided by law, determined to have been sustained as to each of them, in an amount to be trebled in accordance with the antitrust laws, and that judgment be entered against Defendants on behalf of Plaintiff and the Class;

6.    Plaintiff and the Class recover their costs of suit, including reasonable attorneys' fees, costs, and expenses of the lawsuit, as provided by law;

7.    That Defendants, their subsidiaries, affiliates, successors, transferees, assignees and the respective officers, directors, partners, agents, and employees thereof and all other persons acting or claiming to act on their behalf be permanently enjoined and restrained from continuing and maintaining the combination, conspiracy, or agreement alleged herein;

8.    That Plaintiff and the Class be awarded pre-judgment and post-judgment interest, and that such interest be awarded at the highest legal rate from and after the date of service of the initial complaint in this action;

9.     That Plaintiff and the Class are entitled to equitable relief appropriate to remedy Defendants' past and ongoing restraint of trade, including:

      i.    A judicial determination declaring the rights of Plaintiff and the Class, and the corresponding responsibilities of Defendants; and

      ii.    Issuance of a permanent injunction against Defendants and their parents, subsidiaries, affiliates, successors, transferees, assignees and the Respective officers, directors, partners, agents, and employees thereof and all other persons acting or claiming to act on their behalf from violations of the law as alleged herein.

10.     That Defendants are to be jointly and severally responsible financially for the costs and expenses of a Court-approved notice program through post and media designed to give immediate notification to the Class; and

11.     For such other and further relief as is just under the circumstances.

## XI.     DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff and the Class demand a trial by jury of all the claims asserted in this complaint that are so triable.

Dated: October 20, 2020          **COTCHETT, PITRE & McCARTHY, LLP**

                              */s/ Elizabeth T. Castillo*
                              Elizabeth T. Castillo

                              *Attorneys for Plaintiff Brian McNamara*
                              *and all other similarly situated*

1

2         **UNITED STATES DISTRICT COURT**

3        **NORTHERN DISTRICT OF CALIFORNIA**

4

5   **EPIC GAMES.,**                     Case No. 3:20-cv-05671-JD

6            Plaintiff,        **[PROPOSED ORDER]**
                             **GRANTING ADMINISTRATIVE**

7      v.                     **MOTION TO CONSIDER**
                             **WHETHER CASES SHOULD BE**

8   **GOOGLE LLC; GOOGLE**         **RELATED PERSUANT TO**
    **IRELAND LIMITED; GOOGLE**     **CIVIL L.R. 3-12 AND RELATING**

9   **COMMERCE LIMITED;**          **CASES**
    **GOOGLE ASIA PACIFIC PTE.**

10   **LIMITED; and GOOGLE**
    **PAYMENT CORP.,**

11

12           Defendants.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28       [PROPOSED] ORDER GRANTING ADMINISTRATIVE MOTION
                AND RELATING CASES

Having considered Plaintiff Brian McNamara's Administrative Motion to Consider Whether the Cases Should be Related, as well as the pleadings on file, the Court GRANTS the Motion and ORDERS the Clerk to relate its later-filed case, *McNamara, v. Google LLC et al.*, No. 3:20-cv-07631-JCS (filed Oct. 20, 2020) to the first-filed action, captioned: *In re Epic Games, Inc. v. Google LLC et al.,* No. 3:20-cv-05671-JD (N.D. Cal., filed August 13, 3030).

**IT IS SO ORDERED**

Dated: _____

                                              UNITED STATES DISTRICT JUDGE
                                              THE HONORABLE JAMES DONATO